TATE, Judge.
This suit is to recover damages caused by an allegedly incorrect survey of property, as a result of which a building was partially constructed on the land of another. Plaintiffs appeal from judgment after trial dismissing their suit.
The uncontradicted relevant facts are that E. J. Champagne, defendant-appellee, civil engineer and surveyor, was employed by plaintiffs-appellants, J. E. Breland and B. S. Cruthirds, to survey a portion of certain property owned by them in Boga-lusa, Louisiana, upon which they proposed to erect a building. Champagne made the survey on November 18, 1952, of the lot with sixty-foot front required by plaintiffs, set up stobs (iron pipes and pins) to mark the four corners of the lot, and subsequently furnished plaintiffs a plat of the survey and an informal procés verbal indicating the description of the lot by metes and; bounds. Plaintiffs leased the property according to this description furnished by Champagne on February 16, 1953, to the B. F. Goodrich Company, entering simultaneously into an agreement to construct according to Goodrich specifications a cement block store building thereupon. Construction of the building commenced at once.
On March 20, 1953, at a conference and re-survey at which all parties were present together with three disinterested surveyors, it was definitely agreed that the southeast corner pin or stob was 4 feet 2j4t inches south of the true southeast corner of the lot; as a result, the entire front portion of the almost completed south wall was on the land of Spencer Dudley. It would have cost $5,000 to demolish and reconstruct the south wall; therefore plaintiffs bought from Dudley for $2,000 the strip upon which their wall encroached.
The sole issue is whether the iron stob misplaced 4 feet over on Dudley’s land was placed there by Champagne when he made the original survey on November 18, 1952, or whether it had been removed as correctly situated by Champagne, and deliberately or inadvertently placed 4 feet too far south by February 1953 when construction commenced.
*560 While apparently no Louisiana case has directly discussed the liability of a surveyor resulting from an incorrect survey, counsel agree that he would be responsible for damages caused by his negligence or lack of skill, Article 2316, L.S.A.-Civil Code. See also the general law of other jurisdictions as stated at 50 American Jurisprudence 1150, Verbo “Surveyor”, Section 3. Under the facts and circumstances of this case, it appears that the sum of $2,000, the cost of the excess 55 inches of land reasonably required because of the 4-foot encroachment of the wall, would be the correct quantum should recovery be allowed, in view of the testimony that the cost of moving the wall would exceed that sum.
Essentially, as pointed out by the District Court, in an able and exhaustive analysis of the evidence, determination of this matter hinges on whether the testimony of E. J. Champagne, defendant, or that of Cruthirds, plaintiff co-owner, is accepted as correct.
Champagne positively testifies that the mislocated pin of March 20, 1953, was not placed there by him, and that he had correctly placed the pin 4 feet north thereof at the correct southeast corner of the property. He further produced evidence that a bulldozer had been active on the lot placing-filler thereon during the approximately 4 months between the time of the survey and the time of discovery of the erroneously placed stob. Both he and plaintiff agree that it is necessary in the construction business to guard against the removal and misplacement of such stobs by mischief makers or others.
On the other hand, Cruthirds positively testified that the southeast stob as misplaced was so misplaced by Champagne, since immediately after the original Champagne survey Cruthirds buried a nail exactly 5 feet north of the northeast corner as placed by Champagne, and before commencing construction (in order to guard against the not unusual misplacement of stobs in the interval between the survey and the start of construction), he verified the Champagne northeast and southeast stobs by exact measurement from this point established by Cruthirds himself immediately after the original Champagne survey. Cruthirds stated he commenced construction immediately along the southern line based upon what turned out to be an incorrect southeast corner encroaching 4 feet on his neighbors’ land, connected up with what is admitted to be the correct southwest corner in the rear of the property.
Cruthirds further testified that on March 12, 1953 (8 days before the general conference where all parties agreed that the stob as found was incorrect) he noticed that the southeast corner was closer to the southeast corner of the block than it should be. He telephoned Champagne in Hammond to check on the matter. Both he and Champagne agreed that Champagne came that afternoon and checked the southeast corner, and subsequently Champagne and Cruthirds went to the homes of two surveyors, Roy Timberlake and Ray Mathews in Bogalusa.
Champagne testified positively that he informed Cruthirds at that time on March 12, 1953, that the southeast corner stob as then placed and as used by Cruthirds as a basis of the construction line was 4 feet too far south. Cruthirds testified equally positively that Champagne informed him, “By God, Billy, I am right 1” thus confirming that the stob which subsequently was found to be incorrectly placed had been so placed by Champagne. Plaintiffs argue with considerable force that if Champagne had informed Cruthirds on March 12, 1953, that the southern wall of the building under construction was partially on the land of another, plaintiffs would not have continued spending hundreds of dollars per day- continuing the upwards construction of the wall between March 12, 1953, and March 20, 1953, when the conference and all parties definitely agreed that the stob had been erroneously placed.
Champagne positively states that he not only informed Cruthirds on March 12, 1953, that the stob was misplaced, but that he did *561 so individually again in the presence of his fellow surveyors, Mathews and Timberlake. (Mathews’ testimony was unavailable at the trial since Mathews was in North Africa at the time of trial, and Timberlake recalled both parties visiting him on the date in question, but had absolutely no memory of what the conversation concerned, although he did remember referring them to Mathews.) Cruthirds denies that Champagne so informed him. However, subsequently at two places in his testimony Cru-thirds admitted that the conversation between Champagne and the absent Mathews, on March 12, 1953, concerned at least partly the incorrect placement of the stob (whether by Champagne or someone else not indicated). (Tr.-112; Tr.-118.)
It is largely based upon this latter admission by Cruthirds that the District Court accepted Champagne’s version that he informed Cruthirds on March 12, 1953, that the pin was incorrectly placed and that the pin .as misplaced on March 12, and March 20, 1953, was not as originally placed by Champagne on November 18, 1952, as supported also by the evidence concerning levelling and filling activities on the property in question, vehicle and pedestrian traffic on or near the property, and the admitted possibility of such stobs being changed by third persons between the time of survey and'the time of construction.
The District Court pointed out that if Cruthirds had actually placed the verifying nail 5 feet north of Champagne’s northeast corner (which nail according to Cruthirds was still there at time of trial), it seemed probable that at the conference on March 20, 1953, this information would have been produced for the benefit of the surveyors present at this conference, so that if it showed that the northeast corner as located by reference to the nail (and presumably as placed by Champagne), was exactly as provided by the survey 60 feet north of the southeast stob found to be incorrectly placed, it would have tended to show that Champagne had misplaced the northeast and southeast stobs
We do not believe erroneous the District Court’s factual conclusions upon which determination of this matter must be based.
For the reasons above assigned, the judgment of the District Court herein dismissing plaintiffs’ suit is affirmed at their cost.
Affirmed.